[Civ. No. 9987. Second Appellate District, Division Two.—May 31, 1935.]

LILIAN R. JACKSON, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

Frank C. Hoyt and Samuel A. Rosenthal for Appellant.

Frank Karr, E. E. Morris and C. W. Cornell for Respondent.

CRAIL, J.—This is an appeal from a judgment in favor of the defendant in an action for damages for personal injuries alleged to have been received by the plaintiff as the result of the negligent operation by the defendant of an interurban train on which plaintiff was riding as a passenger. The train collided with an automobile driven by a third person at the intersection of La Brea Avenue and Venice Boulevard in the city of Los Angeles. Plaintiff claims that in the collision particles of glass from the automobile were blown into one of her eyes and that, as a result, both of her eyes were injuriously affected. The train involved in the accident was a westbound, two-car interurban train running from Los Angeles to Santa Monica. Plaintiff was sitting in a seat on the right-hand side of the car, in the smoking compartment, and next to an open window.

From a point about 3,000 feet east of where the accident happened, thence westerly to the Pacific Ocean, defendant's tracks are on its private right of way, excepting where it is crossed by streets and public highways. Defendant's private right of way is effectively protected from vehicular traffic, and the ties and rails are exposed above the ground. There is installed at the said intersection a standard railroad crossing sign bearing the words "Railroad crossing, look out for the cars." Also, there are two wigwag signals which commence to operate when an approaching train has reached a point 900 feet from the crossing and continue to operate until the train has passed the intersection. The wigwag signals were so operating at the time of the accident. The whistle was sounded for the crossing in the usual way and in addition thereto there were several short blasts of the whistle before the crossing was reached. The automobile involved in the accident approached along the highway from the south and passed to the left of other automobiles stopped at the crossing to allow the train to pass. The driver of the automobile disregarded all these danger signals and drove directly in front of the train which struck it. The jury which heard the case returned a verdict in favor of the defendant.

Two doctors, whom plaintiff consulted immediately or soon after the accident, testified that she did not have any glass in her eye, and one of them said that a misplaced eyelash, which he removed, had caused the irritation in her eye. One doctor who examined her for the first time two weeks

after the accident testified that he found glass in her eye and removed it. Plaintiff was forty-six years old and had never worn eyeglasses. An eye specialist, who examined her on behalf of the defendant, testified that there is nothing the matter with her eyes excepting that she has reached the age that the lenses of the eyes begin to lose their elasticity and resilience so that they can no longer expand and contract to accommodate themselves to different conditions, and that all she needs is eyeglasses. Defendant's motorman did everything within his power to avoid the accident.

The defendant presented four defenses. First, that it was not guilty of any negligence. Second, that the plaintiff, herself, was guilty of negligence in voluntarily putting her head outside of the window, thus contributing proximately to the injuries. Third, that the accident happened solely on account of the automobile driver; and, fourth, that the plaintiff received no injuries resulting from the accident. There was evidence on which the jury well might have found for the defendant on any one or all of these defenses.

■ Appellant assigns several alleged errors, all on the ground of misdirection of the jury, or the improper rejection of evidence. However, after a careful examination of the entire cause, including the evidence, as required of us by the Constitution, we are of the opinion that the matters complained of where erroneous have not resulted in a miscarriage of justice. This seems to be a classic illustration of what the people had in mind when they wrote section 4½, article VI, into the Constitution, which reads in effect that no judgment shall be set aside on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. Under this mandate we may not set aside the judgment.

Judgment affirmed.

Stephens, P. J., and Fricke, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 29, 1935.